## NATIONAL COMMITTEE OF the U.S. TAXPAYERS PARTY, et al.

### v.

### Antonio O. GARZA, et al.

### Civil No. A–96–CA–209.

United States District Court,
W.D. Texas,
Austin Division.

April 30, 1996.

Bill J. Malone, Jr., Law Offices of Bill Malone, Jr., Austin, TX, Herbert W. Titus, Troy A. Titus, P.C., Virginia Beach, VA, for plaintiffs.

Christopher Johnsen, Assistant Attorney General, General Litigation Division, Austin, TX, for defendants.

## ORDER

NOWLIN, District Judge.

Before the Court is Plaintiffs' Motion for Preliminary Injunction filed April 4, 1996. A hearing was held in this matter on April 24, 1996 and the following Order reflects the oral ruling made by the Court on that date. For the reasons stated below, the Court denies Plaintiffs' Motion for Preliminary Injunction.

### Background

Plaintiffs are the U.S. Taxpayers Party, its affiliates, and various supporters of Pat Buchanan for President. The State notified the Plaintiffs that, pursuant to Section 162.015 of the Texas Election Code, Pat Buchanan was ineligible for placement on the ballot in November. Texas Election Code Section 162.015(a)(2), a.k.a. the "sore loser" statute, makes a person who was a candidate for nomination in a primary ineligible for a place on the ballot for the succeeding general election as the nominee of a political party other than the party holding the primary in which the person was a candidate. The Defendants

informed the Plaintiffs that because Pat Buchanan had run for President in the Republican primary and lost, he was not eligible to be the U.S. Taxpayers Party's nominee for the same office.

Plaintiffs seek a declaratory judgment that the "sore loser" statute is unconstitutional and injunctive relief enjoining the Defendants from prohibiting the placement of Pat Buchanan on the November ballot as their Presidential candidate.

Plaintiffs argue that the "sore loser" statute violates: (A) their First Amendment right to freedom of speech and association, and their privileges and immunities as United States citizens; and (B) their constitutional right to choose as their presidential nominee a person who meets all of the constitutionally-specified qualifications for the office of President as set forth in Article II of the United States Constitution. Defendants respond that the statute is a permissible ballot access regulation designed to order the election process.

### Analysis

■ In order to obtain a preliminary injunction, a plaintiff must establish: (1) a substantial likelihood of success on the merits; (2) a substantial threat of irreparable injury should the injunction be denied; (3) that the threatened injury outweighs the threatened harm to the defendant; and (4) that granting the preliminary injunction will not disserve the public interest. *Rodriguez v. United States*, 66 F.3d 95, 97 (5th Cir. 1995).

The Court will first address the issue of whether the Plaintiffs have established a substantial likelihood that they will succeed on the merits of this case. Because the Court finds that plaintiffs are unable to show a likelihood of success on the merits, the Court need not address the remaining prongs in the inquiry.

### A. Plaintiffs' Fundamental Rights

■ Plaintiffs contend that the Texas "sore loser" statute abridges their right to freedom of speech and association, as well as their privileges and immunities as United States citizens. The Supreme Court has stated that although the rights of voters are fundamental, not all restrictions imposed by the States on candidates' eligibility for the ballot infringe on voters' rights to associate or choose candidates. *Anderson v. Celebrezze*, 460 U.S. 780, 788, 103 S.Ct. 1564, 1569–70, 75 L.Ed.2d 547 (1983). States are entitled to adopt "generally applicable and evenhanded restrictions that protect the integrity and reliability of the electoral process itself." *Id.*

■ In *Anderson*, the Supreme Court set forth the test for evaluating constitutional challenges to a specific provision of a State's election laws. The Court found that in resolving such a challenge, a court must:

> first consider the character and magnitude of the asserted injury to the rights protected ... [then] identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it must also consider the extent to which those interests make it necessary to burden the plaintiff's rights.

*Id.* at 789, 103 S.Ct. at 1570. When a state election law provision imposes only reasonable, nondiscriminatory restrictions upon the constitutional rights of voters, the State's important regulatory interests are generally sufficient to justify the restriction. *Burdick v. Takushi*, 504 U.S. 428, 112 S.Ct. 2059, 2063–64, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (*citing Anderson*, 460 U.S. at 788–89 n. 9, 103 S.Ct. at 1570 n. 9).

The Supreme Court has recognized the States' strong interest in insuring orderly, fair, and honest elections rather than chaos; maintaining the integrity of various routes to the ballot; preventing interparty raiding; avoiding voter confusion, ballot overcrowding, or the presence of frivolous candidacies; and in seeking to ensure that elections are operated equitably and efficiently. *U.S. Term Limits, Inc. v. Thornton*, —— U.S. ——, —— –——, 115 S.Ct. 1842, 1869–70, 131 L.Ed.2d 881 (1995); *See Storer v. Brown*, 415 U.S. 724, (1974); *Munro v. Socialist Workers Party*, 479 U.S. 189, 107 S.Ct. 533,

93 L.Ed.2d 499 (1986); *Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992).

Plaintiffs argue that the Texas "sore loser" statute abridges their fundamental constitutional rights as voters. Because the provision prohibits the Plaintiffs from placing the Presidential nominee of their choosing on the ballot, this regulation implicates basic constitutional rights. The burden on the Plaintiffs, however, is slight.

The "sore loser" statute does not prohibit the Plaintiffs from selecting a Presidential nominee and placing his or her name on the ballot. It does not discriminate against independent candidates, nor does it create burdensome ballot access requirements for third parties. Rather, the provision bars Plaintiffs from selecting as their nominee an individual who has already run in a party primary and lost, namely Pat Buchanan. This is not to say that Pat Buchanan could not have been the U.S. Taxpayers Presidential nominee. Had Mr. Buchanan aligned himself with the Plaintiffs earlier and never run in the Republican Primary, there would be no obstacle to the Plaintiffs placing his name on the ballot this November. Furthermore, there is nothing to prevent the U.S. Taxpayers Party from running Mr. Buchanan in the next Presidential election. Although the "sore loser" statute impacts the Plaintiffs' fundamental rights as voters, the magnitude of the injury is not great.

Defendants argue that Section 162.015(a)(2) ensures an orderly electoral process and protects the integrity of the system. They assert that the election process is divided between the primary and the general election, with the primaries screening out candidates within a party and the general election allowing the party candidates, independent candidates, and write-in candidates to face each other on the ballot. The Texas Election Code envisions the November general election as the proper forum for both major struggles and focused policy disputes between the political parties. The November general election is not an arena for continuing intraparty feuds, nor is it a proper arena for a failed party candidate to run yet again in the same election cycle as a candidate of another separate and distinct political party. The "sore loser" statute prohibits, and thus avoids, divisive and internecine intraparty fights after a political party had decided its nominee. Defendants argue that this section and the Texas Election Code as a whole seek to minimize unrestrained political factionalism and bickering that can only serve to confuse the electorate.

In *Storer v. Brown,* 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974), the Supreme Court upheld a California disaffiliation statute that denied ballot access to an independent candidate if that candidate had been affiliated with any political party within one year prior to the immediate preceding primary election. The Supreme Court found that the restriction protected the compelling state interest of furthering the stability of the political system by guarding against splintered parties and unrestrained factionalism. The Court stated:

> the general election ballot is reserved for major struggles; it is not a forum for continuing intraparty feuds. The provision against defeated primary candidates running as independents effectuates this aim, the visible result being to prevent the losers from continuing the struggle and to limit the names on the ballot.

*Storer,* 415 U.S. at 735, 94 S.Ct. at 1281.

The State may impose restrictions which settle intraparty competition before the general election. *American Party of Texas v. White,* 415 U.S. 767, 781, 94 S.Ct. 1296, 1306, 39 L.Ed.2d 744 (1974). In striking down an Ohio filing deadline in *Anderson,* the Supreme Court noted that the restriction was neither a "sore loser" nor a disaffiliation statute, indicating that those sorts of ballot access restrictions were constitutional. *Anderson,* 460 U.S. at 804, 103 S.Ct. at 1578. Courts have routinely upheld provisions similar to the Texas statute at issue. *See, e.g., Burdick v. Takushi,* 504 U.S. 428, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992); *Swamp v. Kennedy,* 950 F.2d 383 (7th Cir. 1991); *Backus v. Spears,* 677 F.2d 397 (4th Cir.1982).

The Court finds that the Defendants' stated reasons for the "sore loser" statute are

valid, legitimate justifications for the restriction. There is no question that the present situation presents an example of intraparty feuding. Pat Buchanan is now, and at all relevant times has been, a Republican. It is well known that he would like to be in the place of the likely Republican nominee for President, Bob Dole, and that he has sought, in a spirited contest, the Republican Party's Presidential nomination in 1996. The "sore loser" statute is designed to address this very type of intra-party conflict.

Although the State's interest in protecting political stability is not as strong when a national election is at issue, the Defendants' justifications for the restriction are valid. The State's interest in preventing factionalism, intra-party feuding, and voter confusion outweighs the minimal burden the statute places on the Plaintiffs' rights. The Court finds that the Texas "sore loser" statute is a reasonable, nondiscriminatory restriction that protects the integrity and reliability of the electoral process itself and does not overly burden Plaintiffs' fundamental rights as voters.

## B. Additional Qualifications for Office

 Plaintiffs also assert that the statute at issue has the impermissible effect of creating qualifications for the office of President in addition to those set forth in Article II of the Constitution. They further argue that the statute exceeds the State's ability to regulate the manner in which Presidential Electors are selected, and is an impermissible attempt by the State to determine who may be a candidate for President. As support for these contentions, Plaintiffs cite to the United Supreme Court's decision in *U.S. Term Limits, Inc. v. Thornton*, — U.S. ——, 115 S.Ct. 1842, 131 L.Ed.2d 881 (1995).

In *Term Limits*, the Supreme Court struck down an amendment to the Arkansas Constitution which prohibited the name of an otherwise-eligible candidate for Congress from appearing on the general election ballot if that candidate had already served three terms in the House or two terms in the Senate. The Supreme Court held that states may not impose qualifications for the offices of U.S. senator or representative in addition

to those set forth in the Constitution, and that a state provision is unconstitutional when it has the likely effect of handicapping a class of candidates and has the sole purpose of creating additional qualifications indirectly. *Id.* at ——, 115 S.Ct. at 1871. Plaintiffs contend that the present situation is analogous and is unconstitutional under the holding in *Term Limits*.

The Supreme Court has repeatedly found ballot access provisions to be a valid way for the states to regulate the election process and to preserve the integrity of the system. The holding in *Term Limits* in no way changes this doctrine. Rather, *Term Limits* stands for the proposition that the states cannot create impermissible qualifications for office and then dress them up in "ballot access clothing." *Id.* at ——, 115 S.Ct. at 1867. In other words, ballot access provisions are constitutional so long as they are, in fact, designed to legitimately limit ballot access.

The Supreme Court found the Arkansas provision was an indirect attempt on the part of the State to accomplish what it could not accomplish directly, namely preventing the election of incumbents. The provision in *Term Limits* had the effect of placing an absolute bar on an entire class of candidates forever, while the "sore loser" statutes simply regulate electoral procedures and candidate choices. In the present case, Texas is not denying an otherwise-qualified candidate the opportunity to run for President, but rather allowing each candidate only one bite at the apple. The statute is not an absolute bar on an entire class of persons, nor does it create additional qualifications for federal office. This is evident by the fact that Mr. Buchanan has already been afforded access to the primary election ballot.

The Court finds that the Texas statute is a ballot access regulation, not an indirect qualification for the office of President. Therefore, the holding of *Term Limits* is not dispositive in the present case.

### Conclusion

In order to obtain a preliminary injunction, Plaintiffs must first prove that there is a

substantial likelihood of success on the merits. The Court finds that Plaintiffs have not met this initial burden. The case law indicates that statutes such as the one presently in question are valid, ballot access regulations which states may employ to preserve the integrity of the electoral system. Even though the statute impacts the Plaintiffs' fundamental rights as voters, the magnitude of the injury is slight and is outweighed by the State's legitimate interest in protecting the integrity of the electoral process. The Court finds it doubtful that Plaintiffs will be able to establish that Section 162.015(a)(2) is unconstitutional. Accordingly, the Court shall deny Plaintiffs' Motion for Preliminary Injunction.

IT IS THEREFORE ORDERED that Plaintiffs' Motion for Preliminary Injunction is hereby DENIED.

SIGNED AND ENTERED.