The STATE of Texas, McLennan County Democratic Party, and John Cullar, in his official capacity as County Chair of the McLennan County Democratic Party, Appellants,

v.

David L. HODGES, Appellee.

No. 02–0518.

Supreme Court of Texas.

Argued July 24, 2002.

Decided Aug. 21, 2002.

R. John Cullar, R. Coke Mills, Mills Cullar & McLeod, LLP, Waco, Joseph David Hughes, Assistant Solicitor General, Julie Caruthers, Office of the Solicitor General, John Cornyn, Attorney General, Howard G. Baldwin, First Assistant Attorney General, Jeffrey S. Boyd, Michael Winget–Hernandez, Office of the Attorney General, Austin, for Appellants.

Roy L. Barrett, Naman Howell Smith & Lee, Waco, Keith C. Cameron, Naman Howell Smith & Lee, Austin, for Appellee.

Justice RODRIGUEZ delivered the opinion of the Court.

This direct appeal involves the construction and constitutionality of section 162.015 of the Texas Election Code, which prohibits a person from appearing on the general election ballot as a candidate for a political party "other than the party holding the primary in which the person voted or was a candidate." TEX. ELEC.CODE § 162.015(a)(2). There are two issues in this appeal: (1) whether section 162.015 can reasonably be construed to permit Judge David Hodges to appear as a Democratic Party candidate in the November 2002 election even though he voted in the Republican Party primary, and if not, (2) whether the statute as applied to Judge Hodges violates either the Texas or United States Constitutions. The trial court rendered judgment that section 162.015 is unconstitutional as applied to Judge Hodges "under the specific and unique facts of this case." We conclude that section 162.015 cannot reasonably be construed to permit Judge Hodges to be a Democratic Party general election candidate when he voted in the Republican Party primary and that the statute is not unconstitutional as applied to him. Accordingly, we reverse the trial court's judgment and render judgment that Judge Hodges is ineligible for a place on the November 2002 general election ballot as a Democratic Party candidate.

## I. Background

David L. Hodges is the incumbent judge of McLennan County Court at Law No. 1. He has served in that capacity for about twenty years. In March 2002, Judge Hodges again ran for his office in the Democratic Party primary. He was unopposed and, therefore, received the Democratic Party's nomination for Judge of McLennan County Court at Law No. 1.

However, rather than casting a vote in the March 2002 Democratic Party primary, Judge Hodges decided to vote for his friend, Jim Meyer, who was running in a contested race for district judge in the Republican Party primary. After discovering that Judge Hodges voted in the Republican Party primary, the McLennan County Democratic Party Chair, John Cullar, informed Judge Hodges that section 162.015 left him no discretion but to remove Judge Hodges from the November 2002 general election ballot as the Democratic Party's nominee. It is undisputed that Judge Hodges would be eligible to

run as the Democratic Party candidate for county court at law judge in the general election but for section 162.015. It is also undisputed that absent section 162.015 Judge Hodges would be guaranteed re-election because he has no opposition in the general election.

Before Cullar issued a declaration of ineligibility, Judge Hodges filed a declaratory judgment action, asking the trial court to declare that section 162.015 does not render him ineligible to be a Democratic Party candidate and to enjoin Cullar from declaring him ineligible. The trial court disagreed with Judge Hodges's statutory construction argument and denied his request for a temporary injunction.

After the trial court's ruling on Judge Hodges's statutory construction argument, Cullar issued a Notice of Administrative Declaration of Ineligibility, declaring Judge Hodges ineligible for a place on the 2002 general election ballot. Thereafter, Judge Hodges amended his petition, claiming that section 162.015 is unconstitutional as written and as applied to him. Although Judge Hodges's amended petition did not cite the provisions of the Texas and United States Constitutions that section 162.015 allegedly violates, his trial court brief stated that the statute impermissibly burdens his right to vote and violates his substantive due process rights. The State of Texas intervened, arguing for the statute's constitutionality.

After a non-jury trial, the trial court held section 162.015 unconstitutional as applied to Judge Hodges "under the specific and unique facts of this case." The trial court rendered judgment, permanently enjoining the McLennan County Democratic Party from declaring Judge Hodges ineligible for a place on the November 2002 general election ballot as the Democratic Party candidate for Judge of McLennan County Court at Law No. 1 based on his

participation in the Republican Party primary. The State of Texas, Cullar, and the McLennan County Democratic Party ("Appellants") filed direct appeals to this Court. By cross-point, Judge Hodges reasserted his statutory construction argument as an alternative basis for upholding the trial court's judgment, but he did not argue that section 162.015 is facially unconstitutional. We noted probable jurisdiction and set the case for oral argument.

## II. Jurisdiction

This Court has direct appeal jurisdiction from "an order of a trial court granting or denying an interlocutory or permanent injunction on the ground of the constitutionality of a statute of this state." TEX. GOV'T CODE § 22.001(c); *see also* TEX. CONST. art. V, § 3–b. Here, the trial court issued a final judgment, declaring section 162.015 unconstitutional as applied to Judge Hodges and permanently enjoining the McLennan County Democratic Party from declaring Judge Hodges ineligible for a place on the November 2002 general election ballot based on section 162.015. Accordingly, we have direct appeal jurisdiction to consider the constitutionality of section 162.015 as applied to Judge Hodges. In addition, when this Court has appellate jurisdiction over any issue, it acquires "extended jurisdiction" over all other questions of law properly preserved and presented. *Edgewood Indep. Sch. Dist. v. Meno*, 917 S.W.2d 717, 749 n. 39 (Tex.1995); *City of Corpus Christi v. Pub. Util. Comm'n*, 572 S.W.2d 290, 294 (Tex.1978). Thus, we also have direct appeal jurisdiction to consider the statutory construction issue Judge Hodges raises in his cross-point.

## III. Applicable Law

### A. Standard of Review

Our review on direct appeal is confined to questions of law. TEX. CONST.

art. V, § 3–b; Tᴇx. Gov'ᴛ Cᴏᴅᴇ § 22.001(b); Tᴇx.R.App. P. 57.2; *Perry v. Del Rio,* 67 S.W.3d 85, 91 (Tex.2001). We review questions raising constitutional concerns *de novo. Perry,* 67 S.W.3d at 91.

## B. Statutory Construction

Section 162.015(a)(2) provides:

Restrictions on Candidacy in General Election by Candidate or Voter in Primary

(a) A person who voted at a primary election or who was a candidate for nomination in a primary is ineligible for a place on the ballot for the succeeding general election for state and county officers as: ... (2) the nominee of a political party other than the party holding the primary in which the person voted or was a candidate.

Tᴇx. Eʟᴇᴄ.Cᴏᴅᴇ § 162.015(a)(2). Section 162.015(a)(1) prohibits a primary candidate from later running for the same office as an independent, and section 162.015(b) prohibits a primary candidate from later running for the same office as a write-in candidate. These so-called "sore loser" provisions of section 162.015 are not at issue in this case.

Judge Hodges argues that section 162.015(a)(2) is susceptible to more than one reasonable interpretation, including an interpretation that would render him eligible to participate in the November 2002 general election as a Democratic Party candidate. Specifically, he contends that section 162.015(a)(2) allows primary voters and primary candidates to be eligible as candidates in the general election for either (1) the party holding the primary in which the individual voted or (2) the party holding the primary in which the individual was a candidate. Judge Hodges argues that section 162.015(a)(2) permits him to be a candidate for either the Republican Party (because that is the party primary in

which he voted) or the Democratic Party (because he was a candidate in its party primary), but prohibits him from acting as a candidate for any other party (such as the Libertarian Party, the Socialist Party, or the Green Party).

Appellants argue that section 162.015(a)(2) is clearly an ineligibility statute rather than an eligibility statute, as Judge Hodges apparently construes it. According to Appellants, the statute's plain and unambiguous meaning is that an otherwise eligible candidate is ineligible if the candidate either votes in another political party's primary or runs as a candidate in another political party's primary. While Judge Hodges is not ineligible by virtue of the crossover candidacy element of section 162.015(a)(2), he is ineligible by virtue of the crossover voting element. Appellants also point out that both the Secretary of State and the Attorney General have adopted this construction, *see* Op. Tex. Sec'y State No. DAD–65 (1982); Op. Tex. Att'y Gen. No. 96–094 (1996), and they urge us to defer to these prior administrative interpretations.

 When we construe a statute, our primary goal is to ascertain and give effect to the Legislature's intent in enacting it. *In re Canales,* 52 S.W.3d 698, 702 (Tex. 2001). We determine the Legislature's intent by examining the language used in the statute within the context of the entire statute. *Upjohn Co. v. Rylander,* 38 S.W.3d 600, 607 (Tex.2000). If a statute is clear and unambiguous, we need not resort to rules of construction or other aids to construe it. *Id.* Even then, however, we may consider, among other things, the statute's objectives and the consequences of a particular construction. *See* Tᴇx. Gov'ᴛ Cᴏᴅᴇ § 311.023; *In re Canales,* 52 S.W.3d at 702. In election cases, however, we are constrained in our interpretation by the principle that any statutory provision

that restricts the right to hold office must be strictly construed against ineligibility. *Wentworth v. Meyer*, 839 S.W.2d 766, 767 (Tex.1992). Therefore, if section 162.015(a)(2) is susceptible of more than one reasonable interpretation, we must apply the least exclusionary interpretation.

■ Applying these principles, we agree with Appellants that the statute precludes Judge Hodges from running as a Democratic Party nominee in the general election based on his participation in the Republican Party primary. Although Judge Hodges's proposed construction of the statute is a *possible* reading, it is not a *reasonable* one because it conflicts with the Election Code's overall structure and the limiting language within the statute itself.

■ First, Judge Hodges's construction of section 162.015 would allow a prospective candidate to hedge his or her candidacy options for a particular office by voting in the primary of one political party and aligning as a primary candidate with another political party. If the prospective candidate lost a party's nomination in the primary, Judge Hodges's construction of section 162.015(a) would affirmatively authorize the prospective candidate to seek the same office as a candidate for another political party. That interpretation is antithetical to the statute's most obvious and laudable purpose, which is to prevent candidates from having more than one bite at the apple in a single election year by precluding a primary candidate from running in the general election for the same office as an independent, a write-in candidate, or

a candidate for any other political party that nominates its candidates by primary election. *See* TEX. ELEC.CODE § 162.015(a), (b); *see also Nat'l Comm. of the U.S. Taxpayers Party v. Garza*, 924 F.Supp. 71, 74–75 (W.D.Tex.1996) (holding that the sore-loser provisions of section 162.015 are reasonable, nondiscriminatory, and constitutional). Although the statute's "sore loser" aspect is not implicated under the facts of this case, the possibility that such a situation could occur under Judge Hodges's proposed construction of the statute precludes us from giving effect to that construction.

■ Second, other Election Code provisions suggest that the Code is structured to prevent the dual-party affiliation or alignment that Judge Hodges's interpretation would allow. For example, the Code provides that an individual can only affiliate with one political party per election cycle and precludes a person from voting in the primary of one political party and then voting in a run-off primary for another political party. *See* TEX. ELEC.CODE §§ 162.004, 162.012, 162.014. Although the Election Code does not explicitly characterize party candidacy as "affiliation" with a political party, it is evident from the cited provisions that the Code requires voters and candidates to align themselves with a single party for an entire election cycle for purposes of nominating candidates to run in the general election.

Furthermore, Judge Hodges's interpretation would permit a candidate who crossover votes to serve as a candidate for two different parties at the same time,[1] a result at odds with the Election Code's party

---

1. Such a situation could occur even though a candidate, like Judge Hodges, did not run in the primary he voted in. For example, in situations where a candidate can lawfully hold two elected offices at once, a candidate could run for nomination as a primary candidate for one party and be appointed as a replacement candidate to fill a vacancy created by death, withdrawal, or ineligibility of a candidate for the political party in whose primary he voted without running afoul of section 162.015 as interpreted by Judge Hodges.

purity scheme. Moreover, by voting in a political party's primary, one becomes legally affiliated with that party. TEX. ELEC. CODE § 162.003. Party affiliation potentially brings access to the integral workings of the party. *See, e.g.,* TEX. ELEC.CODE § 162.001(a) (requiring party affiliation to serve as a delegate to or to participate in a party convention, to be a member on a state executive committee, or to be appointed to fill a vacancy on a county executive committee), § 192.002(b) ("To be eligible to serve as a presidential elector for a political party, a person must be affiliated with the party.") It is inconceivable that the Legislature would affirmatively authorize a person to participate significantly in the affairs of one political party while running for office as another political party's candidate.

Finally, the language and title of section 162.015 clearly demonstrate an intent to restrict prospective candidacies to a single party during an election cycle. The statute plainly states that a prospective candidate is eligible to be a candidate in the general election only for *"the* party holding the primary in which the person voted or was a candidate," not *"a* party" or *"any* party."

For these reasons, we cannot accept Judge Hodges's proposed construction of section 162.015.

## C. Constitutional Challenge

The parties agree that the proper test for determining the constitutionality of section 162.015(a)(2) is the balancing test articulated in *Anderson v. Celebrezze,* 460 U.S. 780, 789, 103 S.Ct. 1564, 75 L.Ed.2d 547 (1983). The parties disagree, however, on how to apply that test in this case. ▮ The United States Supreme Court has repeatedly stated that not every election regulation that impinges a fundamental right requires strict scrutiny and that

there is no "litmus-paper test" for determining whether election regulations are constitutional. *See, e.g., id.* Rather, a more flexible standard applies. The Supreme Court succinctly enunciated that standard as follows:

> [A]s the full Court agreed in *Anderson* ... [a] court considering a challenge to a state election law must weigh "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate" against "the precise interests put forward by the State as justifications for the burden imposed by its rule," taking into consideration "the extent to which those interests make it necessary to burden the plaintiff's rights."

*Burdick v. Takushi,* 504 U.S. 428, 434, 112 S.Ct. 2059, 119 L.Ed.2d 245 (1992) (citing *Anderson* and holding Hawaii's ban on write-in candidacies constitutional under the *Anderson* balancing test). Under the *Anderson* balancing test, if a regulation "severely" restricts First and Fourteenth Amendment rights, the regulation must be "narrowly drawn to advance a state interest of compelling importance." *Id.* "But when a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests are generally sufficient to justify' the restrictions." *Id.*

▮ In determining the relative importance of the interests the State advances, the State need not produce empirical evidence that the harm the statute is designed to avoid has actually occurred. *Munro v. Socialist Workers Party,* 479 U.S. 189, 195–96, 107 S.Ct. 533, 93 L.Ed.2d 499 (1986). Moreover, a statute does not fail merely because it is underinclusive and

does not eliminate all types of conduct that could produce the same evil to which the statute is directed. *Clements v. Fashing,* 457 U.S. 957, 969–70, 102 S.Ct. 2836, 73 L.Ed.2d 508 (1982) ("The State 'need not run the risk of losing an entire remedial scheme simply because it failed, through inadvertence or otherwise, to cover every evil that might conceivably have been attacked.'") The main issues here are: (1) whether the statute burdens a candidate's right to vote or his right to be a candidate and how severe the burden is, (2) whether the State's interests are sufficiently "important" or "compelling" under the particular circumstances in this case, and (3) whether section 162.015 is reasonable and nondiscriminatory as applied to Judge Hodges.

1. *Does the statute burden a candidate's right to vote? If so, how severe is the burden?*

■■■ Judge Hodges argues that section 162.015 restricts the right of a person who seeks access to the general election ballot to vote because the statute restricts a candidate to voting only in the primary of the party in which he wishes to be a candidate in the general election. Further, he argues that the section prohibits an "independent" candidate from voting in the primary of any party for any office. He also argues that the penalty imposed for violating this restriction is "severe," namely, forfeiture of a nomination for public office. Judge Hodges asserts that the restriction is even more severe in his case because he is a twenty-year incumbent who was guaranteed reelection but will now be "defrocked" of his position and livelihood because of section 162.015(a)(2). According to Judge Hodges, this severe restriction on the right to vote warrants strict scrutiny and cannot survive unless it is narrowly tailored to serve a compelling state interest.

Appellants counter that Judge Hodges "misidentif[ies] the injury" when he claims that section 162.015(a)(2) severely burdens his right to vote. Instead, Appellants argue, it is Judge Hodges's candidacy that is burdened because of his crossover voting. Because candidacy has never been deemed a fundamental right and the impact to Judge Hodges's right to vote is merely secondary and residual, the burden is less than severe and the statute is not subject to strict scrutiny. Accordingly, Appellants assert that the statute should be upheld if the restriction is reasonable and nondiscriminatory and can be justified by the State's important regulatory interests.

The Supreme Court has recognized that "[s]tates retain the power to regulate their own elections." *Burdick,* 504 U.S. at 433, 112 S.Ct. 2059. "Common sense, as well as constitutional law, compels the conclusion that government must play an active role in structuring elections; as a practical matter, there must be a substantial regulation of elections if they are to be fair and honest and if some order, rather than chaos, is to accompany the democratic processes." *Id.* (citations omitted). The Court has also stated:

> Election laws will invariably impose some burden upon individual voters. Each provision of a code, whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote and his right to associate with others for political ends.... Consequently, to subject every voting regulation to strict scrutiny and to require that the regulation be narrowly tailored to advance a compelling state interest ... would tie the hands of States seeking to

assure that elections are operated equitably and efficiently.

*Id.* (citation omitted).

 We agree with Appellants that candidacy is not a fundamental right. *Benham v. Driegert,* 853 F.Supp. 951, 953 (N.D.Tex.1994), *aff'd,* 38 F.3d 569 (5th Cir. 1994) ("Courts have not recognized candidacy as a fundamental right, but instead have held that the existence of barriers to a candidate's access to the ballot does not of itself compel heightened scrutiny."). "Every voter has a right to be a candidate for a public office if he possesses the qualifications required to fill the office. It does not necessarily follow that he can be the candidate of a particular political party." *Roberts v. Cleveland,* 48 N.M. 226, 149 P.2d 120, 121 (1944). Although there is no question that Judge Hodges was permitted to vote in the primary of his choice and did in fact do so, we disagree with Appellants that the statute imposed no direct burden on Judge Hodges's right to vote. Nevertheless, observing *Burdick,* we conclude that strict scrutiny is not required because the burden on Judge Hodges's right to vote is not severe.

Section 162.015(a)(2) does not completely disenfranchise Judge Hodges, or any other candidate, from participating in the electoral process either as a voter or as a candidate. Rather, Judge Hodges is permitted to exercise freely his vote in the general election without regard to party affiliation or alignment. Section 162.015(a)(2) likewise does not and did not preclude Judge Hodges from voting in the party primary of his choice. Furthermore, section 162.015(a)(2) does not preclude Judge Hodges from running as a candidate in the general election except to the extent it requires him to be aligned with the party with whom he is affiliated. Such a requirement does not impose a severe burden on either his candidacy or his right to vote. Finally, neither section 162.015(a)(2) nor any other provision in the Election Code prohibits Judge Hodges from voting in the primary of his choice when he is not running for office or from changing his party affiliation each election cycle for purposes of voting in a party primary or running for public office. Instead, the "restriction" placed on Judge Hodges's right to vote is limited to a single election cycle and a specific voting act—crossover voting.

Although we are not unsympathetic to Judge Hodges's situation, we hold that the burden on his right to vote is not severe and strict scrutiny is not warranted in this case. *See Rosario v. Rockefeller,* 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed.2d 1 (1973) (rejecting a constitutional challenge to New York's closed primary elections that required a potential voter to affiliate with a party at least eight months in advance of the primary to participate in the party's primary); *Nader v. Schaffer,* 417 F.Supp. 837, 850 (D.Conn.1976), *aff'd,* 429 U.S. 989, 97 S.Ct. 516, 50 L.Ed.2d 602 (1976) (rejecting a claim that Connecticut's closed primary election system is an unconstitutional burden on the right to vote). *But see Kusper v. Pontikes,* 414 U.S. 51, 94 S.Ct. 303, 38 L.Ed.2d 260 (1973) (striking down an Illinois law that prohibited a voter from voting in a political party's primary if he had voted in any other party's primary in the preceding twenty-three months because the statute effectively "locked" voters into a particular party affiliation for nearly two years and required them to abstain from voting in any primary for two years to break the lock).

*2. Are the State's interests sufficiently important?*

 "[W]hen a state election law provision imposes only 'reasonable, nondiscriminatory restrictions' upon the First and Fourteenth Amendment rights of voters, 'the State's important regulatory interests

are generally sufficient to justify' the restrictions." *Burdick*, 504 U.S. at 434, 112 S.Ct. 2059 (citations omitted). Appellants contend that the following interests that the statute advances are important: (1) regulating the election process, (2) preventing voter confusion, (3) preventing the destabilizing and disorganizing effects of interparty raiding and intraparty feuding, (4) maintaining the order and integrity of primary election processes, (5) protecting party purity, and (6) protecting the right of political parties not to associate with another party's members. *See, e.g., Garza*, 924 F.Supp. at 73 (identifying a number of important interests served by section 162.015 in affirming the constitutionality of the "sore loser" provisions of the statute); *see also Storer v. Brown*, 415 U.S. 724, 726, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974) (outlining the same interests cited in *Garza* and noting that the State has a compelling interest in protecting the stability of the political system).

According to Appellants, these are important interests that do not severely burden any constitutionally protected rights. The Election Code clearly sets out what is required to affiliate with a particular party, and section 162.015(a)(2) sets out the consequences of that affiliation for people who intend to run as candidates for some other party. In Texas, Judge Hodges has the right to affiliate with another party to alter the outcome of that party's primary, but he does not have the right to then appear as a candidate for the opposing party.

Judge Hodges contends that the State's alleged interests do not apply in his case or are *de minimis*. He concedes that many of the interests section 162.015 advances are implicated and important in the "sore loser" context, but not here. Judge Hodges asserts that there is no state interest of significant importance that justifies

"prevent[ing] a judicial candidate who is unopposed in his own primary, has no opponent in any other primary, has no independent candidate opponent, and no write-in opponent, from exercising his constitutional [sic] protected right to vote in the primary of his or her choice. Under these unique facts, the candidate could not possibly, by voting in another party's primary, improperly affect his or her own race ... nor could such a vote cause voter confusion, chaos, or any other harm to the electoral process," including party raiding.

Whatever the merits of a partisan judicial system may be, if any, under Texas law Judge Hodges is a representative of the Democratic Party by virtue of his candidacy for renomination to his bench. Yet he voted in the Republican Party primary for the asserted purpose of influencing the nomination of the Republican Party's candidate for district judge. Judge Hodges urges us to focus only on the effect his one vote could have in affecting his own race. He ignores, however, the issues concerning the associational rights of the political parties, the cumulative effect of similar voting practices by other candidates, and the possibility of intraparty feuding that could result from Judge Hodges's support of opponents of other Democratic Party candidates. Judge Hodges likewise ignores the difficulties in proving whether party raiding has actually occurred in a particular case given that an individual's stated motive for voting is not readily controvertible and there are no records of how an individual has cast his or her vote in a particular race.

In a somewhat analogous case, the Supreme Court in *Storer v. Brown* found California Election Code section 6830(d) constitutional. 415 U.S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974). That section prohibited independent candidates from appearing on the general election ballot if

they voted in the immediately preceding primary of some party. *Id.* at 726. That section also prohibited independent candidates from appearing on the general election ballot if they had a registered affiliation with a qualified political party at any time within one year prior to the immediately preceding primary election. *Id.* Messrs. Storer and Frommhagen were registered Democrats until early in 1972. *Id.* at 728. They both sought ballot status as independent candidates for the United States House of Representatives. *Id.* at 727. In rejecting their constitutional challenge, the Supreme Court considered California's interests in maintaining the stability of its political process as not only permissible, but compelling, and as outweighing the interest the candidates and their supporters may have. *Id.* at 736. "To conclude otherwise might sacrifice the political stability of the system of the State, with profound consequences for the entire citizenry, merely in the interest of particular candidates and their supporters having instantaneous access to the ballot." *Id.; see also Rosario,* 410 U.S. at 762, 93 S.Ct. 1245 (voter registration provision was not invidious or arbitrary and was "tied to the particularized legitimate purpose" of preventing interparty raiding); *Garza,* 924 F.Supp. at 75 (section 162.015 "is a reasonable, nondiscriminatory restriction that protects the integrity and reliability of the electoral process"). We conclude that the State's important regulatory interests are sufficient to justify any restrictions imposed by section 162.015.

3. *Is the statute reasonable and nondiscriminatory as applied to David Hodges?*

▉ Although we have determined that the State's important regulatory interests are sufficient to justify the statute, the statute is constitutional only if the restric-

tions the statute imposes are reasonable and nondiscriminatory. *Burdick,* 504 U.S. at 434, 112 S.Ct. 2059. Judge Hodges does not contend that the statute is discriminatory on its face or discriminatory as it is being applied to him, and we conclude in any event that it is not. Likewise, Judge Hodges does not specifically discuss the issue of reasonableness of the restrictions, but we will consider his arguments regarding narrow tailoring of the statute in determining whether the restrictions are reasonable as applied to him.

Section 162.015(a)(2) explicitly precludes Judge Hodges from appearing on the general election ballot as a Democratic Party nominee because he affiliated with the Republican Party by voting in its primary. *See* Tex. Elec.Code §§ 162.003, 162.015(a)(2). Because section 162.015(a)(2) cuts off access to the general election ballot, the McLennan County Democratic Party cannot select Judge Hodges to fill the vacancy on the ballot created by his ineligibility. *See id.* § 145.036 (outlining the procedure for filling a vacancy in nomination created by death, withdrawal, or ineligibility of a candidate). As a result, Judge Hodges argues that the statute is drawn more broadly than is necessary to advance the State's legitimate interests.

Judge Hodges asserts that "the statute could have been drafted so that if a person votes in the primary of a party, and is at the same time a candidate of another party, the party chairman or some other committee or body acting for the party would have the authority to declare the candidate ineligible to receive the nomination that he or she won at the primary, but would not be required to do so." Alternatively, Judge Hodges argues that the statute "could have been written so as to provide that the nominee who won the primary of one party, but voted in the primary of

another party, would forfeit the nomination that he or she won at the election." In the case of forfeiture, Judge Hodges contends that the Democratic Party should still be given discretion to nominate him as a replacement candidate. Judge Hodges argues that either of these alternatives would preserve the State's interests in prohibiting dual-party affiliation in the same election cycle and preserving party purity by giving a political party discretion to declare a candidate ineligible in the first instance or by causing the candidate to forfeit a nomination in the second instance but allowing the affected political party to determine whether to retain the candidate or not at its discretion.

Appellants contend that the statute is appropriately limited. The statute would not have prevented Judge Hodges from voting in the Republican Party primary and running in the general election as a Republican if he had filed with and become the nominee of the Republican Party. The statute will not prevent him from running for office as a Democrat or a Republican in future primaries and general elections. It only prevents him from affiliating with the Republican Party by voting in its primary and running as a Democrat in the same election cycle. Thus, Appellants argue, the prohibition against dual-party affiliation in a single election cycle embodied in the provisions of section 162.015(a)(2) is very limited. We agree.

Although narrow tailoring may not be required, we note in the first instance that the restriction in section 162.015(a)(2) is much more narrowly tailored than the Ohio statute upheld in *Lippitt v. Cipollone,* 337 F.Supp. 1405 (N.D.Ohio, 1971), *aff'd,* 404 U.S. 1032, 92 S.Ct. 729, 30 L.Ed.2d 725 (1972) (precluding an individual from being on the primary ballot for a political party when the individual had voted in a different political party's primary during the preceding two years). Moreover, although Judge Hodges's statutory alternatives address some of the State's interests, the proposed alternatives are not entirely effective in advancing all of the State's interests. For example, giving a political party "discretion" to retain a candidate who voted in the opposing party's primary would not necessarily avoid the potentially destabilizing effect of intraparty feuding over whether the candidate's conduct adversely affected the party's interests. The automatic disqualification provision, however, relieves party members from having to fight amongst themselves about whether to retain an arguably disloyal party member. Likewise, leaving the retention issue in the party's hands does nothing to advance the State's interest in assuring that voters are not misled as to a candidate's true party affiliation.

In addition, Judge Hodges's proposed statutory alternatives do not protect the associational rights of the Republican Party. *See Cal. Democratic Party v. Jones,* 530 U.S. 567, 574, 120 S.Ct. 2402, 147 L.Ed.2d 502 (2000)(" '[T]he freedom to join together in furtherance of common political beliefs,' ... 'necessarily presupposes the freedom to identify the people who constitute the association, and to limit the association to those people only....' " (citations omitted)). To the extent section 162.015 is aimed at reducing the disruptive effect on a party's candidate selection process that occurs through party raiding, it provides a strong disincentive both to candidates and opposing political parties. Judge Hodges's proposed alternatives, however, would not adequately protect a political party from interparty raiding when there is party complicity in the raiding scheme.

We hold that section 162.015(a)(2) does not violate either the Texas or United States Constitutions because the State's

interests in maintaining the integrity and stability of the political process are both important and compelling and section 162.015 is a reasonable, nondiscriminatory method of advancing those interests.

## IV. Conclusion

We conclude that section 162.015 cannot reasonably be construed to permit Judge Hodges to be a Democratic Party general election candidate when he voted in the Republican Party primary. We also conclude that the statute is not unconstitutional as applied to Judge Hodges. Accordingly, we reverse the trial court's judgment and render judgment that Judge Hodges is ineligible for a place on the November 2002 general election ballot as the Democratic Party candidate for Judge of McLennan County Court at Law No. 1. We vacate the district court's injunction.