**Opinion filed October 26, 2017**



## In The

# Eleventh Court of Appeals

_____

## No. 11-15-00211-CV

_____

## CHARLES MATLOCK, INDIVIDUALLY AND D/B/A MATLOCK INSURANCE AGENCY, Appellant

## V.

## KENNETH FITZGERALD, GAYLE FITZGERALD, BUFORD NARRAMORE, AND SHARON NARRAMORE, Appellees

### On Appeal from the 35th District Court
### Brown County, Texas
### Trial Court Cause No. CV1207249

## M E M O R A N D U M   O P I N I O N

This is an appeal from a bench trial in a suit brought by the former clients of an insurance agent over failed investment products that he marketed to them. The investment products involved life settlements sold by a company located in Houston called "A&O." As recently explained by the Texas Supreme Court, a life settlement is a transaction in which someone buys (at a discount from its payout value) an

existing life insurance policy from the insured and then sells interests in the policy to third parties. *Life Partners, Inc. v. Arnold*, 464 S.W.3d 660, 663 (Tex. 2015); *see Matlock v. Hill*, No. 07-15-00048-CV, 2016 WL 3659988, at *1 n.1 (Tex. App.—Amarillo June 30, 2016, no pet.) (mem. op.). Through the marketing efforts of Charles Matlock, Appellees Kenneth and Gayle Fitzgerald invested $100,000 in A&O life settlements, and Appellees Buford and Sharon Narramore invested $272,758.39 in A&O life settlements.

A&O filed for bankruptcy in 2009, and many of its principals were convicted of various federal crimes, including securities fraud. *See United States v. Abdulwahab*, 715 F.3d 521, 526–27 (4th Cir. 2013); *United States v. Allmendinger*, 706 F.3d 330, 344 (4th Cir. 2013); *In re Life Fund 5.1 LLC*, No. 09 B 32672, 2010 WL 2650024, at *3 (Bankr. N.D. Ill. June 30, 2010). As a result of the bankruptcy and criminal proceedings, the Fitzgeralds were only able to recover $10,442.07 of their original investment, and the Narramores were only able to recover $29,431.64. The trial court entered judgment against Matlock in favor of the Fitzgeralds and the Narramores for the remaining amounts, $89,557.93 and $243,326.75, respectively. The trial court also awarded the Fitzgeralds and the Narramores attorney's fees in the amount of $252,111.25. Matlock challenges the trial court's judgment in seven issues. We affirm.

*Background Facts*

Kenneth Fitzgerald is a pharmacist in Bangs. He first purchased health insurance from Matlock. The topic of the A&O product came up during one of their meetings. Fitzgerald testified that Matlock "was promoting a product that he thought was extremely -- that I would be interested in because it had potential for tremendous returns with being virtually impossible to lose on." Fitzgerald stated that it looked like a good investment because they would be investing $100,000 and receiving $140,000 in five years. The Fitzgeralds were also impressed that the investment

2

appeared to be backed by a bond issued by "PCI" that guaranteed the timely repayment of their investment. Fitzgerald executed a "Bonded Life Contract" with A&O on November 7, 2006, and invested $100,000.

Sharon Narramore is a retired teacher's aide living in May. Sometime between Thanksgiving and Christmas of 2006, she saw an advertisement that Matlock placed in the Brownwood newspaper. The representative advertisements that she referenced in her testimony provided as follows: "Is your CD or 401k EARNING 12%? INSURED & COMPOUNDED"; "Is your CD or 401k EARNING 10%? COMPOUNDED"; "Is your CD or 401k EARNING 9 1/2%? INSURED & COMPOUNDED." Narramore contacted Matlock in response to the advertisement.

Narramore testified that she had several face-to-face meetings with Matlock about the A&O product. She received a brochure issued by A&O during these meetings proclaiming that A&O had "developed a strategy that is revolutionizing the insurance industry and exceeding client expectations." On a page depicting a life preserver, the brochure touted that it could stop a client's portfolio from drowning by putting an investor "in a position to achieve substantial returns with minimal risk." On a page depicting a baseball umpire's mask, the brochure stated that safety is a cornerstone of A&O's philosophy. The brochure also represented that A&O backed its life settlement product with a reinsurance guarantee bond that secured the investor's time frame for the payout of the investment.

Narramore testified that she told Matlock she was only interested in the investment if it was "totally safe" and that Matlock assured her that it was. Matlock told the Narramores that the investment was safe because it was backed by a bond. Narramore testified that Matlock told them that there was minimal risk associated with the product. Narramore stated that Matlock seemed very knowledgeable about the product, and she assumed that he had thoroughly researched it.

3

Matlock set up a conference call between the Narramores and representatives of A&O so that the Narramores could learn more about the product. During the conference call, Sharon Narramore took detailed notes and made several notations on the paperwork that the Narramores had been provided. The A&O representatives told the Narramores that the "high risk" references in the paperwork did not apply to their investment. As a result of Matlock's efforts, the Narramores invested their life savings of over $272,000 in A&O products in September and October of 2007.

At the time that Matlock marketed the A&O product to Appellees, he held a "General Lines Life, Accident, Health & HMO" insurance agent license. Matlock first learned of the A&O product in January 2006 from Adley Wahab[1] of A&O. Matlock subsequently met with Wahab at A&O's offices in Houston in 2006. Matlock testified that A&O's offices were very nice and that A&O appeared to be a legitimate operation. Matlock testified that the A&O investment seemed to be a great product because it was backed by a PCI bond. Matlock characterized the PCI bond as a "game changer."

Matlock submitted his first application for the sale of an A&O product in July 2006. Matlock believed that he could sell the product because he thought it was a life insurance policy. However, he was subsequently told by A&O in late 2006 that the product might be a security. A&O officials asked Matlock in January 2007 about getting a license to sell securities in order for him to continue selling the A&O product. Matlock declined their request because he did not want to have to get another license. Matlock testified that he stopped selling the A&O product from late 2006 until mid-2007. Matlock started selling the A&O product again when Wahab informed him that he could sell it if A&O made him a "managing member." Matlock

---

[1]Wahab is also known as Adley Abdulwahab.

testified that Wahab told him that state securities law would not apply to him if he was a managing member of A&O.

A&O provided Matlock with business cards that identified him as "Charles Matlock *Managing Member* A&O LIFE FUNDS, L.P." Matlock provided the Narramores with this business card during his meetings with them. However, Matlock did not get paid anything for being a "managing member," and he had no duties or responsibilities at A&O. Matlock testified that he relied on the information provided to him by A&O about the managing member designation and that the arrangement did not set off any "red flags" to him because he was told that A&O's lawyers had looked into the matter.

On October 15, 2007, the Texas Department of Insurance sent a letter to Matlock concerning his efforts to market an A&O investment product underwritten by PCI to another client. In addition to asking Matlock several questions concerning his efforts to market A&O products, the letter advised Matlock that PCI was not authorized to conduct any insurance business in Texas because the Commissioner had issued a cease and desist order against PCI on November 6, 2006. The letter also advised Matlock that he was marketing a product that he was not authorized to sell under his current insurance agent license.

John Courtade testified on behalf of Appellees as an expert in securities law. Courtade testified that the A&O product marketed by Matlock to Appellees was a security subject to state and federal securities law. He characterized Matlock's newspaper advertisements comparing the product to a CD as "highly deceptive." Courtade testified that the A&O brochure was misleading and that the managing member designation given to Matlock was misleading as well. Courtade stated that Matlock had an obligation to research the product he was selling irrespective of whether or not he was registered to sell securities. He compared Matlock's obligation to a person driving without a valid driver's license—that person would

still have to comply with traffic laws while driving. Courtade described Matlock's failure to thoroughly investigate A&O, its principals, and PCI and Matlock's failure to disclose negative information to Appellees as constituting a high degree of recklessness.

Matlock denied knowing any negative information about A&O and PCI at the time that he marketed the products to Appellees. Matlock testified that, as an insurance agent, his obligation was to be truthful with his clients. He did not believe that he had a responsibility to research the credentials of the companies he was selling. Matlock's expert, Stephen Carl Burgess, testified that he did not believe that the A&O investment product constituted a security. He testified that an insurance agent did not have a duty to investigate or perform due diligence on the products that he or she sells. Burgess testified that he believed that Matlock had complied with all applicable duties in his dealings with Appellees.

Appellees asserted causes of action against Matlock for common law fraud and breach of contract. Additionally, the Narramores asserted a cause of action under the Texas Securities Act. *See* TEX. REV. CIV. STAT. ANN. art. 581-33 (West 2010). The trial court found Matlock liable to Appellees on all theories of liability that they asserted. Specifically, the trial court determined that Matlock was liable to the Fitzgeralds for common law fraud and breach of contract and that Matlock was liable to the Narramores for common law fraud, breach of contract, and violations of the Texas Securities Act. The trial court determined that the losses sustained by Appellees were the same under each of the theories of liability they asserted. Accordingly, the multiple theories of liability found by the trial court served as independent grounds supporting the damages awarded to Appellees.

*Analysis*

An appellant must attack all independent bases or grounds that support the judgment that he challenges on appeal. *See Britton v. Tex. Dep't of Criminal Justice*,

6

95 S.W.3d 676, 681 (Tex. App.—Houston [1st Dist.] 2002, no pet.); *Harris v. Gen. Motors Corp.*, 924 S.W.2d 187, 188 (Tex. App.—San Antonio 1996, writ denied). If he does not prevail on his challenge to each independent basis supporting the judgment, we must affirm the judgment. *See Britton*, 95 S.W.3d at 681; *Harris*, 924 S.W.2d at 188.

In his first six issues, Matlock challenges the three independent grounds of recovery found by the trial court. His first and second issues address the common law fraud theory. Matlock's third issue challenges the breach of contract ground. Matlock's fourth, fifth, and sixth issues concern the trial court's determination that he violated the Texas Securities Act. In his seventh issue, Matlock challenges the trial court's award of attorney's fees.

Prior to addressing Matlock's issues, we note that the trial in this case occurred prior to the issuance of two recent opinions concerning life settlements. In *Life Partners, Inc. v. Arnold*, the Texas Supreme Court determined that life settlement agreements are investment contracts that are securities subject to the Texas Securities Act. 464 S.W.3d at 667–84. The court in *Arnold* additionally determined that its decision applied retroactively, rejecting a claim that it should only apply prospectively. *Id.* at 684–85.

*Matlock v. Hill* involved Matlock's efforts to market A&O products to other customers. 2016 WL 3659988. The trial in *Matlock v. Hill* occurred prior to the trial underlying this appeal. However, the Amarillo Court of Appeals had not issued its opinion affirming the trial court's judgment against Matlock until after the trial underlying this appeal. In addition to involving the same investment product and the same defendant marketing it, the attorneys in *Matlock v. Hill* are the same attorneys as in this case.

We begin our analysis with Matlock's third issue concerning breach of contract. He asserts that the trial court's conclusions of law in support of this theory

7

of recovery violate Article I, section 16 of the Texas Constitution pertaining to the impairment of contracts. This section provides that "[n]o bill of attainder, ex post facto law, retroactive law, or any law impairing the obligation of contracts, shall be made." TEX. CONST. art. I, § 16. Matlock also premises his fourth, fifth, and sixth issues on this constitutional provision.

The conclusions of law that Matlock challenges simply provide that Matlock is liable to the Fitzgeralds and the Narramores for breach of contract. Matlock contends that the retroactive imposition of any statutory restrictions on his sale of life settlements to the Fitzgeralds and the Narramores constitutes an impermissible impairment under the Texas Constitution on his contract with his clients. The constitutionality of a statute or ruling under a statute is a question of law, which we review de novo. *See State v. Hodges*, 92 S.W.3d 489, 494 (Tex. 2002).

Matlock presented a similar contention in *Matlock v. Hill* by asserting that the court could not retroactively apply the Texas Securities Act's requirements to his transaction with his clients. 2016 WL 3659988, at *4. Relying on the Texas Supreme Court's decision in *Arnold,* the Amarillo Court of Appeals rejected Matlock's contention. The court in *Arnold* noted that it was interpreting and applying a very old law rather than creating a new law. 464 S.W.3d at 685. We agree with our sister court that the Texas Supreme Court's decision in *Arnold* precludes Matlock's claim of an improper retroactive application of the Texas Securities Act.

Moreover, the breach of contract ground of recovery found by the trial court did not depend on any statutory violations. The trial court simply found that "Defendant Matlock acted as an agent of the A&O entities involved and breached the contracts." Matlock's claim of an improper retroactive application of the Texas Securities Act has no bearing on his liability for breach of contract. Accordingly, we overrule Matlock's third issue.

As noted previously, the breach of contract ground of recovery was an independent ground supporting the trial court's award of damages. We do not reach Matlock's first, second, fourth, fifth, or sixth issues because our resolution of Matlock's third issue is dispositive on the question of his liability for the damages awarded by the trial court. *See* TEX. R. APP. P. 47.1.

Matlock's seventh issue addresses the trial court's award of attorney's fees. The trial court awarded Appellees attorney's fees of $252,111.25. The trial court specified that the attorney's fees awarded to the Fitzgeralds were based on the breach of contract ground of recovery and that the attorney's fees awarded to the Narramores were based on the grounds of recovery of breach of contract and violations of the Texas Securities Act. Accordingly, the breach of contract ground of recovery was also an independent ground supporting the award of attorney's fees to Appellees.

Matlock initially asserts that any recovery for attorney's fees for breach of contract would violate Article 1, section 16. This is essentially the same contention that he made in his third issue. Our rejection of Matlock's third issue is dispositive of this contention. Matlock directs the bulk of his contentions to the manner in which Appellees' attorneys calculated their fees. He first asserts that Appellees' attorneys failed to adequately reflect the time that was expended in working on the case. Matlock also asserts that Appellees failed to properly segregate attorney's fees between claims that permit attorney's fees to be recovered and claims that do not permit a recovery of attorney's fees. Finally, Matlock contends that Appellees' attorneys commingled work performed for *Matlock v. Hill* with the attorney's fees sought in this matter.

An award of attorney's fees generally is within the discretion of the trial court. *El Apple I, Ltd. v. Olivas*, 370 S.W.3d 757, 761 (Tex. 2012). Appellees used the "lodestar" method to prove their claim for reasonable and necessary attorney's fees.

9

Under the lodestar method, a two-step process is required to determine what constitutes a reasonable attorney's fee. *Id.* at 760. First, the court must determine the reasonable hours spent by the attorneys in the case and a reasonable hourly rate for such work. *Id.* The reasonable hours determined are then multiplied by the applicable rate, the result of which is the lodestar. *Id.* A party that seeks an award of attorney's fees using the lodestar method bears the burden of proof. *Id.* at 761. Such proof should include evidence "of the services performed, who performed them and at what hourly rate, when they were performed, and how much time the work required." *Id.* at 764.

Appellees' attorneys submitted affidavits detailing their attorney's fees in this case, which totaled $282,111.25. The affidavits were broken down into the following categories: Depositions, Pretrial Hearings, Mediation, Trial, Pleadings, Discovery, and Correspondence. For many of the categories, the attorneys estimated the time expended on the related tasks based upon the number of pages they prepared or reviewed. For example, the attorneys estimated that they spent three minutes per page to review deposition transcripts and exhibits in preparing for depositions. The attorneys estimated that they spent thirty minutes per page drafting pleadings, thirty minutes per page drafting discovery, thirty minutes per page writing correspondence, five minutes (or one minute—depending on the attorney) per page reviewing pleadings, five minutes per page reviewing discovery requests and responses, five minutes (or two minutes—depending on the attorney) per page reviewing evidence, fifteen minutes (or five minutes—depending upon the attorney) per page reviewing correspondence, and one minute per e-mail. The attorneys then multiplied the number of pages prepared or reviewed for various work tasks by these "per page time estimates" to calculate the amount of time expended.

Matlock opposed Appellees' attorney's fees affidavits. He presented the same argument to the trial court that he is asserting on appeal—that Appellees' attorneys

are charging "by the page" rather than upon the time actually expended on representing Appellees. The trial court conducted a hearing on attorney's fees. Appellees' counsel asserted that the attorneys were "very conservative on [their] time assessments." In this regard, the affidavits noted various matters that were not included in the calculations, such as time preparing for depositions, travel delays, witness preparation, and early correspondence in the cases. The trial court subsequently awarded Appellees attorney's fees of $252,111.25.[2]

When a party seeks a recovery of attorney's fees under the lodestar approach, the requirements of *El Apple* apply. *See Long v. Griffin*, 442 S.W.3d 253, 255 (Tex. 2014) (per curiam) (applying *El Apple* to a request for attorney's fees under TEX. CIV. PRAC. & REM. CODE ANN. § 38.001 (West 2015)); *see also Arrington v. Aranda Pools, Inc.*, No. 11-15-00207-CV, 2017 WL 3923662, at *3 (Tex. App.—Eastland Aug. 31, 2017, no pet. h.) (same). In *El Apple*, the court stated that "[t]he starting point for determining a lodestar fee award is the number of hours 'reasonably expended on the litigation.'" *El Apple*, 370 S.W.3d at 762 (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). However, neither *El Apple* nor any of the other Texas Supreme Court cases interpreting it have required that time records prepared contemporaneously when the work is performed must be admitted into evidence to support a recovery of attorney's fees under the lodestar approach. *City of Laredo v. Montano*, 414 S.W.3d 731, 736 (Tex. 2013) ("El Apple does not hold that a lodestar fee can only be established through time records or billing statements.").

The court noted in *El Apple* that the attorneys in that case may not have contemporaneous billing records available in light of the new approach it adopted

---

[2]The trial court indicated in its letter ruling that it reduced the amount of attorney's fees awarded to Appellees by $30,000 based on its determination that this amount was only attributable to the common law fraud claim.

for the lodestar method. *El Apple*, 370 S.W.3d at 764. Accordingly, it remanded the case so that the attorneys could attempt to reconstruct their work in the case. *Id.*; *see Long*, 442 S.W.3d at 255–56. The court's opinion in *El Apple* was only issued within a month of the filing of the underlying proceedings in this case, and the Texas Supreme Court's subsequent opinions in *Long* and *Montano* were issued during the pendency of the case. Furthermore, some of our sister courts took the position that the requirements of *El Apple* were restricted to only the claims referenced in *El Apple*. *See Ferrant v. Graham Assocs., Inc.*, No. 02-12-00190-CV, 2014 WL 1875825, at *7–8 (Tex. App.—Fort Worth May 8, 2014, no pet.) (mem. op.) (holding that *El Apple* did not apply in a breach of contract case).[3] Accordingly, the novelty and uncertain application of *El Apple* may have also affected the manner in which Appellees' attorneys kept track of their time during the pendency of this case.

*El Apple* stands for the proposition that generalities about tasks performed by attorneys provide insufficient information for the factfinder to meaningfully review whether the tasks and hours were reasonable and necessary under the lodestar method. *Long*, 442 S.W.3d at 255. Accordingly, the attorney must provide more evidence other than just the total number of hours worked on a case. *Id.* Instead, the attorney must provide evidence of the time devoted to the specific tasks performed. *Montano*, 414 S.W.3d at 736–37.

Unlike the evidence in *Long*, *Montano*, and *El Apple*, the affidavits prepared by the attorneys in this case detail time spent on specific tasks. While the attorneys did not present contemporaneous time records, they did provide an estimate of the time they expended on various tasks using the pages prepared or reviewed as a reference point for their estimations. The court noted in *El Apple* that appellate courts generally accord "considerable deference" to a trial court's findings regarding

---

[3]Appellees cited *Ferrant* at the hearing on attorney's fees.

whether counsel's claimed hours are excessive, redundant, or unreasonable. 370 S.W.3d at 763–64. This deference is attributable to the trial court's superior understanding of the case and the factual matters involved. *Id.* at 764. We conclude that the trial court's acceptance of the time estimates provided by Appellees' attorneys on the specific tasks they performed is also entitled to deference. The attorneys' affidavits in this case provided sufficient information for the trial court to perform a meaningful review as required by *El Apple*.

Finally, Matlock complains that the trial court failed to properly segregate the attorney's fees between the claims asserted by Appellees. Specifically, Matlock is asserting that Appellees sought attorney's fees for their claim of common law fraud. Matlock also asserts that Appellees failed to segregate work that overlapped the work performed in *Matlock v. Hill*. As noted previously, the trial court reduced the attorney's fees sought by Appellees by $30,000 for work it determined was attributable to the common law fraud claim. The trial court also found in its findings of fact that no attorney's fees were awarded for the common law fraud claim. The trial court's determination of the attorneys' time spent on compensable claims versus non-compensable claims is a matter within the trial court's discretion. *See id.* The record does not show that the trial court abused its discretion in making these determinations. We overrule Matlock's seventh issue.

*This Court's Ruling*

We affirm the judgment of the trial court.

October 26, 2017                                            JOHN M. BAILEY

Panel consists of: Wright, C.J.,                            JUSTICE
Willson, J., and Bailey, J.

13