TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-04-00369-CV






Appellant, Anderson Mill Municipal Utility District//Cross Appellants,

John C. Robbins and Theresa M. Robbins


v.


Appellees, John C. Robbins and Theresa M. Robbins//Cross-Appellee,

Anderson Mill Municipal Utility District







FROM THE DISTRICT COURT OF WILLIAMSON COUNTY, 368TH JUDICIAL DISTRICT

NO. 01-535-C368, HONORABLE BURT CARNES, JUDGE PRESIDING





O P I N I O N


 This appeal arises from an Anderson Mill neighborhood controversy regarding John
and Theresa Robbinses' parking of a thirty-foot travel trailer at their residence and constructing of
a fourteen-foot tall trailer-port to house it. The Anderson Mill Municipal Utility District obtained
a judgment enforcing restrictive covenants to bar the Robbinses' actions, but the district court
declined to award attorney's fees to the District. On appeal, the parties' dispute centers on whether
the district court was required to award the District its attorney's fees.

 In its sole issue, the District argues that section 54.237 of the water code made such
an award mandatory. See Tex. Water Code Ann. § 54.237 (West 2002). While the Robbinses
concede that section 54.237 is a mandatory attorney's fee statute, they respond with various grounds
they contend could support the judgment. They also bring a four-issue cross-appeal attacking the
District's right to relief under section 54.237 and, to the extent it is based on that claim, the judgment
enforcing the restrictive covenants. Under section 54.237, we are required to reverse and render
judgment awarding the District's attorney's fees and otherwise affirm the judgment.


BACKGROUND


 In 1974, Anderson Mill Joint Venture, the developer of Village Two at Anderson
Mill, a subdivision in Williamson County, imposed and recorded deed restrictions and restrictive
covenants upon properties in the subdivision. There are three sections of the restrictive covenants
that are at issue in this case:



 Section A-2, entitled "Architectural Control," requires prior approval, by an
"architectural control" committee, of any plans to construct, place or alter any
building on a lot. However, such approval is not required, and compliance with
the related covenants is deemed, if the committee or its designated
representatives "fails to approve or disapprove within 30 days after plans and
specifications have been submitted to it, or in any event, if no suit to enjoin the
construction has been commenced prior to the completion thereof."




 Section A-4 states that "No building shall be located on any lot nearer than 5
feet to the interior lot line . . . ."




 Section A-9, titled "Temporary Structures or Emplacements" prohibits the
"structure or placement of a temporary character, mobile home, trailer, . . . that
are larger than 8 feet by 10 feet in width and length and 8 feet high [from being]
erected, placed, driven, altered or permitted to remain on any lot at any time,
either temporary or permanent, without the prior written consent of the
Architectural Control Committee."




It is undisputed that these covenants ran with the land.


 In 1994, the Robbinses purchased a home on Split Rail Parkway in Anderson Mill.
A primary theme of the Robbinses at trial was that, notwithstanding the restrictive covenants,
Anderson Mill had been allowed to become an "outdoor-friendly area" where recreational vehicles,
campers, boats, and structures to house them were commonplace. According to the Robbinses,
before they purchased their home in Anderson Mill, they drove through the neighborhood and
ascertained that it was an "outdoor-friendly area" where many residents kept boats, trailers, and
recreational vehicles parked in driveways. There was evidence that, in the years that followed, the
Robbinses had--without resistance from the District or homeowner's association--kept trailers or
other recreational vehicles of varying sizes at their residence and had built a second driveway to
accommodate these vehicles.

 In April 2001, the Robbinses purchased a thirty-foot travel trailer for approximately
$31,000. They parked the trailer in their residence driveway and began constructing a fourteen-foot
tall metal-framed structure to house the trailer. These actions evidently alarmed some area residents. 
Shortly after construction began, an anonymous flyer entitled "URGENT MESSAGE" was circulated
to neighborhood residents complaining about the size of the trailer-port construction. Having
learned of the controversy, the District's general manager, Mike Bamer, went to the Robbinses'
home and urged them to stop construction because the trailer-port violated deed restrictions. The
District followed up with a letter to the Robbinses asking them to attend its next board meeting on
April 25. At the meeting, the District's board stated that the trailer-port violated deed restrictions. 
The Robbinses agreed to remove the trailer-port, and subsequently did so. However, their large
travel trailer remained in their driveway.

 In May, the Anderson Mill Neighborhood Association sent a letter to the Robbinses
stating that parking the trailer in the driveway was in violation of deed restrictions, and if the
violation was not remedied, the case would be referred to the District for further action. In July, the
Association sent an e-mail to Bamer, alleging that the Robbinses had violated deed restrictions and
stating that it believed the violation, if allowed to continue, would "have a negative impact on the
property values in that area of the District." A few days later, Bamer sent a letter to the Robbinses
notifying them that the Association had filed a complaint with the District concerning the parking
of a travel trailer on the Robbinses' property. The letter explains that the Association "contend[s]
that these alleged violations reduce property values." The Robbinses were summoned to the July
19 District board meeting, where "the Board of Directors will determine whether the alleged
violations reduce property values in the area."

 Having previously accommodated the District's demands by removing their trailer-port, this time the Robbinses stood firm in their position. At the meeting, they advised the board that
they would refuse to remove the travel trailer from their driveway. Also, the Robbinses claim that,
by this time, they had re-initiated construction of the trailer-port. They reasoned that if they were
going to have to defend a lawsuit to keep their travel trailer, they might as well also defend their right
to construct the trailer-port in which they desired to house the trailer. The Robbinses allege that the
trailer-port construction was completed prior to the District's August meeting.

 As completed, the trailer-port was fourteen feet tall. It extended to within three
inches of neighbor Pascual Marquez's property line. The travel trailer and trailer-port blocked the
view from one of the bedrooms in Marquez's home, and bright lights on the trailer-port illuminated
his bedroom.

 On September 19, 2001, the District, the Anderson Mill Neighborhood Association,
and neighborhood residents Pascual Marquez, Nathan and Shawna Pitts, Robert William Rupe, and
Ina Kakeen Tresca filed suit against the Robbinses seeking a declaration that the Robbinses had
breached restrictive covenants and injunctive relief requiring them to remove the trailer-port and
trailer, and attorney's fees and costs. All plaintiffs other than the District and Marquez ultimately
withdrew from the case. The district court submitted only the following issues to the jury: (1)
whether the District or Marquez had waived their rights to enforce the restrictive covenants at issue;
(2) the amount of attorney's fees reasonably and necessarily incurred by "Anderson Mill Municipal
Utility District and Pascual Marquez"; and (3) the amount of attorney's fees reasonably and
necessarily incurred by the Robbinses. The jury found that neither the District nor Marquez had
waived their rights to enforce any of the restrictive covenants. It also awarded $35,000 in attorney's
fees to the District and Marquez for their trial work, but did not award them appellate attorney's fees. 
The district court rendered final judgment (1) declaring that the Robbinses' trailer-port and trailer
violated the deed restrictions; (2) declaring that the District and Marquez had not waived their rights
to enforce the deed restrictions; (3) requiring the Robbinses to remove the trailer-port and trailer
within 30 days and enjoining their placement on the property in the future; but (4) ordering each
party to bear its own attorney's fees and costs. This appeal followed.


DISCUSSION


 In its sole issue, the District contends that the district court erred in refusing to award
its attorney's fees. It points to section 54.237 of the water code, which provides:


(a) As used in this section, "restriction" means a limitation on the use of real
property that is established or incorporated in properly recorded covenants,
property restrictions, plats, plans, deeds, or other instruments affecting real
property in a district and that has not been abandoned, waived, or properly
rescinded.


(b) A [municipal utility] district may take all actions necessary to enforce a
restriction, including the initiation, defense, or intervention in litigation or an
administrative proceeding to enjoin or abate the violation of a restriction when,
in the reasonable judgment of the board of directors of the district, enforcement
of the restrictive covenant is necessary to sustain taxable property values in the
district.


(c) In addition to damages which a district is entitled to recover, a district shall be
entitled to recover its costs and reasonable attorney's fees when a district is the
prevailing party in litigation or an administrative proceeding to enforce a
restriction.



Tex. Water Code Ann. § 54.237. The District emphasizes the mandate that "a district shall be
entitled to recover its costs and reasonable attorney's fees when a district is the prevailing party in
litigation . . . to enforce a restriction." See id. § 54.237(c).

 The Robbinses acknowledge that section 54.237 is a "mandatory fee provision." See
Bocquet v. Herring, 972 S.W.2d 19, 20 (Tex. 1998) (statutes providing that party "shall be awarded"
attorney's fees not discretionary). They do not dispute that, if the District was the prevailing party
in a suit to "enforce a restriction" under section 54.237, the district court would have had no
discretion to refuse such an award. See id.; see also Tex. Gov't Code Ann. § 311.016 (West 2005)
("shall" imposes duty). However, they advance several legal theories they contend could have
supported the district court's failure to assess attorney's fees in favor of the District. First, the
Robbinses contend that the District waived its right to appeal the denial of its attorney's fees by not
objecting in the trial court. Next, the Robbinses, relying on the fact that the District did not request
findings of fact and conclusions of law regarding the attorney's fees issue, urge that we imply various
fact findings in support of the judgment.

 The Robbinses also raise several issues challenging the District's right to assert a
claim under section 54.237: (1) as a matter of law, the Robbinses were deemed to have complied
with the restrictive covenants because the District did not file suit before they had finished
constructing their trailer-port; (2) under section 54.237, the District failed to meet its burden of
proving that the deed restrictions had not been waived or abandoned; (3) the District failed to prove
that its enforcement decision was reasonably based on a perceived need to sustain taxable property
values; (4) section 54.237 violates the Texas Constitution; (5) for any or all of these reasons, the
District should not have been the "prevailing party" under section 54.237. Because these issues
would require modification of the judgment if sustained, the Robbinses assert them in a cross-appeal.

 While bringing a cross-appeal attacking the judgment, the Robbinses stress that their
"bottom-line" concern is the prospect of our reversing and rendering judgment awarding the District
attorney's fees under section 54.237. They have requested that we not reach their cross-appeal if we
overrule the District's issue seeking attorney's fees. (1) For these reasons, we begin by assuming that
the district court properly rendered judgment for the District enforcing the restrictive covenants and
consider only whether the court, in light of that ruling, must award the District its attorney's fees. 



Preservation of error


 The Robbinses argue that the District failed to preserve its issue regarding attorney's
fees by failing to object or otherwise raise the issue post-judgment. We have examined the record
and conclude that the District sufficiently alerted the district court to its contentions so as to preserve
error.

 Following the verdict, on December 15, the District and Marquez moved for entry
of judgment notwithstanding the jury's $35,000 attorney's fee award and requested judgment
awarding them $89,000 in attorney's fees, an amount consistent with their counsel's trial testimony.
On the same date, the Robbinses filed a motion for mistrial asserting, among other grounds, that the
jury had mistakenly awarded the $35,000 in attorney's fees to the District when, in fact, it had
actually intended to award the amount to the Robbinses and give the District no fees. (2) They also
sought judgment notwithstanding the verdict to award $76,000 in attorney's fees in their favor, an
amount consistent with their counsel's testimony.

 The record also indicates that a hearing was held on December 18 at which the district
court requested supplemental briefing on attorney's fees. (3) Subsequently, the District and the
Robbinses each filed supplemental briefs on attorney's fees. The District emphasized that section
54.237 made an award of attorney's fees mandatory. See Tex. Water Code Ann. § 54.237. The
Robbinses argued that the District had failed to establish its attorney's fees entitlement under section
54.237, that the District's evidence regarding reasonableness and necessity was controverted and left
room for the district court to "sort[] through that testimony to determine a reasonable award less than
the amount requested," and that the court could offset any amount to which the District was entitled
under section 54.237 with amounts to which the Robbinses were entitled under the declaratory
judgment act. The district court ultimately rendered judgment that "[a]ttorneys fees and costs are
to be borne by the party incurring the same."

 As evidenced by this record, the District had not only alerted the district court to its
argument that it was entitled to attorney's fees under section 54.237, but had briefed the issue at
some length. In fact, attorney's fees appears to have been a primary disputed issue before the district
court as it prepared to render judgment following trial, and the court ruled on the issue when
rendering judgment. The Robbinses' waiver argument rests entirely on the fact that the District did
not object post-judgment to the district court's failure to award attorney's fees. They quote language
from Air Park-Dallas Zoning Commission v. Crow-Billingsley Airpark, Ltd., 109 S.W.3d 900, 912
(Tex. App.--Dallas 2003, no pet.), where the court found waiver because there was "no showing in
the record that either side, following entry of judgment, brought the omission of attorney's fees to
the attention of the trial court by a motion to amend or correct the judgment or in a motion for new
trial." This language is taken out of context. There is no categorical rule requiring a party, after
having alerted the trial court to its arguments regarding attorney's fees prior to judgment, to also
raise that issue post-judgment in order to preserve error on that issue. See Reagan Nat'l Adver. of
Austin, Inc. v. Capital Outdoors, Inc., 96 S.W.3d 490, 497 (Tex. App.--Austin 2002, pet. granted,
judgm't vacated w.r.m.) (waiver where party failed to complain about insufficiency of evidence at
hearing on attorney's fees and did not file a motion for a new trial or any other post-judgment motion
bringing its complaint to the trial court's attention). We conclude that the District preserved error. 
See Tex. R. App. P. 33.1.


Implied findings


 The Robbinses next advance arguments premised on the absence of findings of fact
and conclusions of law regarding attorney's fees. Generally, judgments are presumed valid. See
Vickery v. Commission for Lawyer Discipline, 5 S.W.3d 241, 251 (Tex. App.--Houston [14th Dist.]
1999, pet. denied). When neither party requests findings of fact and conclusions of law, it is implied
that the trial court made all fact findings necessary to support its judgment. Sixth RMA Partners,
L.P. v. Sibley, 111 S.W.3d 46, 52 (Tex. 2003); BMC Software Belgium, N.V. v. Marchand, 83
S.W.3d 789, 795 (Tex. 2002); Worford v. Stamper, 801 S.W.2d 108, 109 (Tex. 1990). Where, as
here, there is a complete record, the judgment will be affirmed on any basis that has support in the
pleadings and evidence under any theory of law applicable to the case. Vickery, 5 S.W.3d at 252;
see Worford, 801 S.W.2d at 109. The presumption of validity is only prima facie and may be
rebutted. Vickery, 5 S.W.3d at 252; see Trapp v. Atlantic Refining Co., 170 S.W.2d 506, 509 (Tex.
App.--Austin 1943, writ ref'd). However, because the presumption is always in favor of the validity
of the judgment, the appellant carries the burden of demonstrating error. See Vickery, 5 S.W.3d at
252; see also Miller v. Hood, 536 S.W.2d 278, 285 (Tex. Civ. App.--Corpus Christi 1976, writ ref'd
n.r.e.). However, when the appellate record includes the reporter's and clerk's records, these implied
findings are not conclusive and may be challenged for legal and factual sufficiency. Marchand, 83
S.W.3d at 795; Roberson v. Robinson, 768 S.W.2d 280, 281 (Tex. 1989); see Sibley, 111 S.W.3d
at 52.

 Relying on the presumption, the Robbinses have asserted that the following findings
can be implied in support of the judgment refusing to award the District attorney's fees:



 The Robbinses were entitled to attorney's fees under the declaratory judgment
act, and the two awards cancelled each other out.




 The District failed to segregate attorney's fees incurred on its behalf from those
incurred on behalf of Marquez or the other five original plaintiffs.




 There was no evidence to support an award of attorney's fees to the District, as
opposed to the other six plaintiffs.




The first implied finding that the Robbinses propose would be inconsistent with the judgment the
district court rendered. Because the judgment awarded relief to the District on its enforcement
claims against the Robbinses, the Robbinses were not, as a matter of law, the prevailing party and
could not have been entitled to attorney's fees under the declaratory judgments act. (4) See Tex. Civ.
Prac. & Rem. Code Ann. § 37.009 (West 2004); see also Allstate Ins. Co. v. Hallman, 159 S.W.3d
640, 643 (Tex. 2005). Inherent in the concept of implying findings in support of the judgment is that
any such findings must be consistent with the judgment. We, therefore, cannot imply the first
finding the Robbinses propose. (5)

 However, the Robbinses' proposed implied findings that the District failed to
segregate its share of attorney's fees and failed to establish their reasonableness and necessity would
not be inconsistent with the judgment. We proceed to consider whether there is legally and factually
sufficient evidence to support such findings.


 Failure to segregate attorney's fees


 In the proceedings below, the District's counsel also represented Marquez and the five
other original plaintiffs. At trial, the plaintiffs collectively introduced evidence that they had
incurred $89,000 in reasonable and necessary attorney's fees. As previously noted, the jury later
found that the District had incurred only $35,000 in reasonable and necessary attorney's fees. 
Thereafter, the parties disputed whether the jury had actually intended to award that amount to the
Robbinses and no fees to the District. Evidently to resolve this dispute, when submitting a proposed
final judgment, the parties filed a joint stipulation that "[t]he amount of attorney's fees testified to
at the time of trial by counsel for the Plaintiffs and similarly the amount of attorney's fees testified
to at the time of trial by counsel for the Defendants were reasonable and necessary."

 While acknowledging their stipulation, the Robbinses strenuously urge that the
district court nonetheless could have impliedly found that the District, as opposed to the other
"plaintiffs" under the stipulation, incurred no reasonable and necessary attorney's fees. They point
out that section 54.237 entitles a municipal utility district "to recover its costs and reasonable
attorney's fees when [it] is the prevailing party in litigation." Tex. Water Code Ann. § 54.237(c)
(emphasis added). The Robbinses observe that the District did not segregate the attorney's fees
attributable to counsel's representation of it from those attributable to the other plaintiffs. By failing
to segregate its specific share of the overall attorney's fees incurred by "plaintiffs," the Robbinses
contend that the District left open the implied finding that "its costs and reasonable attorney's fees"
were zero.

 Generally, a party seeking attorney's fees must show that the fees were incurred on
a claim that allows recovery of such fees, and must segregate fees incurred among different claims
or separate parties. See Stewart Title Guar. Co. v. Aiello, 941 S.W.2d 68, 73 (Tex. 1997); Stewart
Title Guar. Co. v. Sterling, 822 S.W.2d 1, 10 (Tex. 1991). However, when the claims are
"dependent upon the same set of facts or circumstances and thus are 'intertwined to the point of
being inseparable,' the party suing for attorney's fees may recover the entire amount covering all
claims." Sterling, 822 S.W.2d at 11 (citing Gill Sav. Ass'n v. Chair King, Inc., 783 S.W.2d 674, 680
(Tex. App.--Houston [14th Dist.] 1989), modified, 797 S.W.2d 31 (Tex. 1990)). Likewise, when
the plaintiffs' issues are integrally related to the claims upon which recovery of attorney's fees is
based, full recovery of attorney's fees should be allowed. Aiello, 941 S.W.2d at 73. We conclude
that this exception to the segregation requirement applies here. The underlying action was for
declaratory and injunctive relief to enforce restrictive covenants. The claims of all plaintiffs were
dependent upon the same set of facts or circumstances--the existence of the restrictive covenants,
whether the Robbinses breached them, and whether enforcement had been waived by non-enforcement. The plaintiffs employed the same attorneys to seek the same relief based on the same
facts. (6) We conclude that, as a matter of law, the District's claims were inextricably intertwined with
those of the other plaintiffs, enabling the District to recover the entire amount of attorney's fees
covering all claims. See Sterling, 822 S.W.2d at 11. Thus, we find that there is legally and factually
insufficient evidence to support an implied finding that the District incurred zero attorney's fees due
to the District's failure to segregate.


 Reasonableness and necessity of District's attorney's fees


 Our conclusion regarding segregation also forecloses any other implied finding that
the District incurred no reasonable and necessary attorney's fees or some amount that could have
been offset by any fees the district court conceivably could have awarded to the Robbinses. 
According to the joint stipulation and evidence at trial, the District, on behalf of all plaintiffs,
incurred $89,000 in reasonable and necessary attorney's fees, while the Robbinses incurred only
$76,000. Even assuming that the Robbinses were somehow entitled to recover their fees, see Tex.
Civ. Prac. & Rem. Code Ann. § 37.009, the record belies any implied finding necessary to support
the Robbinses' theory of offsetting attorney's fee awards.


The Robbinses' issues challenging the judgment


 Having found no legal support for a judgment that both enforced the restrictive
covenant on behalf of the District and refused to award it attorney's fees, we would be required to
sustain the District's issue unless there are grounds for reversing the portion of the judgment
awarding the District relief under section 54.237. We now turn to the Robbinses' issues attacking
the District's right to assert an enforcement claim under section 54.237.

 At trial, the Robbinses' primary strategy, quite understandably, was to attempt to
convince the jury to find in their favor on the fact issues of whether the District and Marquez had
waived their rights to enforce each restrictive covenant. The Robbinses introduced numerous
photographs taken in the Anderson Mill area purporting to illustrate facts giving rise to waiver, such
as recreational vehicles, boats and trailers parked at residences and structures that residents had
previously constructed to house such vehicles. The jury heard this evidence but ultimately disagreed
with the Robbinses. On appeal, the Robbinses, with new counsel, have shifted focus somewhat with
an array of new legal arguments. Some were not preserved given the Robbinses' different strategic
focus at trial.


 Deemed compliance

 In their first issue, the Robbinses contend that the district court erred in rendering
judgment for the district on its enforcement claims and denying their motions for judgment
notwithstanding the verdict and directed verdict because their compliance with the restrictions
should have been deemed as a matter of law. They rely on section A-2 of the covenants,
"Architectural Control," which states:


No building shall be erected, placed or altered on any lot until a copy of the
construction plans and specifications and a plan showing the location of the structure,
if approved, shall remain in the possession of said committee until this subdivision
has been built in its entirety. . . . In the event the committee, or its designated
representative, fails to approve or disapprove within 30 days after plans and
specifications have been submitted to it, or in any event, if no suit to enjoin the
construction has been commenced prior to the completion thereof, approval will not
be required and the related covenants shall be deemed to have been fully complied
with.



(Emphasis added.) The Robbinses assert that the District did not file suit before the trailer-port
structure was completed and that, therefore, section A-2 "shall be deemed to have been fully
complied with" as a matter of law. We disagree.

 There was disputed evidence at trial regarding exactly when the trailer-port was
completed and whether completion occurred before the District filed suit. As such, the issue of
deemed compliance under section A-2 was one of fact rather than law. The Robbinses did not
request a submission on whether they were deemed to have complied with section A-2, or object to
its omission from the charge. (7) The district court therefore did not err in refusing to grant the
Robbinses' directed verdict and j.n.o.v. motions. We overrule the Robbinses' first issue. (8)


 Waiver


 In their second issue, the Robbinses contend that section 54.237 placed the burden
on the District to disprove that it had waived its right to enforce the restrictive covenants and that
the District failed to meet this burden. They rely on the wording of section 54.237's definition of
"restriction," which includes limitations that have "not been abandoned, waived, or properly
rescinded." Tex. Water Code Ann. § 54.237(a). The Robbinses construe this language as making
the absence of abandonment, waiver, or rescission an element of the District's action under section
54.237 rather than an affirmative defense on which the Robbinses had the burden of proof. 
However, because the Robbinses did not object, tender proposed questions or instructions, or
otherwise complain at trial that the charge improperly assigned to them the burden of proof, they
have waived that contention.

 Because the Robbinses' issue may be more generally construed as a challenge to the
jury's findings on the waiver issues, we will proceed to evaluate the sufficiency of the evidence
supporting those findings. We limit our inquiry to legal sufficiency; although the Robbinses had
filed a motion for new trial that would have preserved a factual sufficiency complaint, their trial
counsel later withdrew the motion at the Robbinses' insistence. See Tex. R. Civ. P. 324(b). (9)

 When reviewing the legal sufficiency of the evidence, we view the evidence in the
light most favorable to the verdict, crediting favorable evidence if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not. City of Keller v. Wilson, No. 02-1012, 2005 Tex. App. LEXIS 436, at *1-2 (Tex. Jun. 10, 2005). There is legally insufficient
evidence or "no evidence" of a vital fact when (a) there is a complete absence of evidence of a vital
fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence
offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere
scintilla; or (d) the evidence conclusively establishes the opposite of the vital fact. Merrell Dow
Pharms., Inc. v. Havner, 953 S.W.2d 706, 711 (Tex. 1997). More than a scintilla of evidence exists
when the evidence supporting the finding, as a whole, "rises to a level that would enable reasonable
and fair-minded people to differ in their conclusions." Havner, 953 S.W.2d at 711.

 Generally, in order to find a waiver of a residential restrictive covenant, the proposed
non-conforming structure must not have a substantially different effect on the neighborhood than any
prior violation. Lay v. Whelan, No. 03-03-00115-CV, 2004 Tex. App. LEXIS 5777, at *12-13 (Tex.
App.--Austin 2004, pet. denied); see Sharpstown Civic Ass'n, Inc. v. Pickett, 679 S.W.2d 956, 957
(Tex. 1984). There is no waiver of restrictive covenants if prior, unobjected-to violations are
insignificant or insubstantial when compared to the proposed new use. Lay, 2004 Tex. App. LEXIS
5777, at *12-13; Pickett, 679 S.W.2d at 957; Stewart v. Welsh, 178 S.W.2d 506, 508 (Tex. 1944). 
In order to carry the burden of demonstrating a waiver of restrictive covenants, a party must prove
that "the violations then existing were so extensive and material as to reasonably lead to the
conclusion that the restrictions had been abandoned." Cox v. Melson-Fulsom, 956 S.W.2d 791, 794
(Tex. App.--Austin 1997, no pet.); see Lay, 2004 Tex. App. LEXIS 5777, at *12-13. The number,
nature and severity of the existing violations, any prior acts of enforcement, and whether it is still
possible to realize to a substantial degree the benefits sought to be obtained through the covenants
are factors to be considered in determining waiver. Cox, 956 S.W.2d at 794.

 Here, there was conflicting evidence regarding the consistency with which the District
had enforced restrictions on structures, set-backs, and vehicles. At trial, the Robbinses introduced
photographs of alleged violations to which the District purportedly had not objected. The District
introduced evidence demonstrating its prior enforcement efforts, including demand letters, lawsuits,
and attempts to reach agreements over other alleged restrictions. We conclude that the District's
evidence rises to a level that would enable reasonable and fair-minded people to differ in their
conclusions as to whether the District had waived the restrictive covenants at issue. Havner, 953
S.W.2d at 711. We accordingly hold that there was legally sufficient evidence that the District did
not waive the restrictions.


 Reasonableness of District's judgment regarding effect on property values


 Also in their second issue, the Robbinses contend that the District failed to comply
with the statutory predicate "when, in the reasonable judgment of the board of directors of the
district, enforcement of the restrictive covenant is necessary to sustain taxable property values in the
district." Tex. Water Code Ann. § 54.237(b). As previously noted, the district court did not submit
to the jury this issue or any other issue regarding the merits of the District's enforcement claims other
than waiver. Nor, given their strategic focus on waiver, did the Robbinses request a submission on
this issue. (10) Accordingly, we will construe the Robbinses' argument here as a challenge to the legal
and factual sufficiency of the district court's implied finding, supporting the judgment, that the
District's board of directors reasonably determined that its enforcement action was necessary to
sustain taxable property values. See Marchand, 83 S.W.3d at 795; Roberson, 768 S.W.2d at 281. (11)

 We have previously stated our legal sufficiency standard of review. When reviewing
a challenge to the factual sufficiency of evidence, we must consider, weigh, and examine all of the
evidence in the record. Plas-Tex., Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989). We
will set aside the verdict only if the evidence that supports the finding is so weak as to be clearly
wrong and manifestly unjust. See Cain v. Bain, 709 S.W.2d 175, 176 (Tex. 1986).

 As a threshold matter, we consider the nature of section 54.237's "reasonable
judgment" requirement, the benchmark against which we will evaluate the sufficiency of the
evidence. See Tex. Dep't of Protective & Regulatory Servs. v. Mega Child Care, Inc., 145 S.W.3d
170, 177 (Tex. 2004) (if statutory text is unambiguous, court must adopt interpretation supported by
statute's plain language unless interpretation leads to absurd results). "Reasonable judgment" as
employed in Texas law denotes the use of ordinary care, not simply arbitrary action, and may imply
a measure of discretion. See Pooser v. Lovett Square Townhomes Owners' Ass'n, 702 S.W.2d 226,
231 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.); Raymond v. Aquarius Condo. Owners'
Ass'n, Inc., 662 S.W.2d 82, 89-90 (Tex. App.--Corpus Christi 1983, no writ).

 The Robbinses attempt to characterize the District's enforcement efforts as based
solely on complaints by the Anderson Mill Neighborhood Association or individual residents rather
than any independent reasonable judgment concerning impact on taxable property values. They also
rely on evidence of some inconsistencies in the District's prior approach to some enforcement
actions. One of the Robbinses' neighbors testified that the District had declined to enforce the
covenants to bar his construction of a large structure to house his recreational vehicles in the belief
that it could not prove his structure would actually decrease property values. The neighbor added
that a District representative had confided to him that its contrary approach with the Robbinses had
been driven by the District's "new attorneys," who believed that it no longer had to prove that
enforcement was necessary to preserve property values. Finally, the Robbinses rely on evidence of
an appraisal, made while they were constructing the trailer-port, indicating that their property value
had increased since the prior year.

 On the other hand, there is evidence that the District received considerable input from
residents who expressed concern that the Robbinses' construction of the trailer-port and placement
of their travel trailer was endangering their property values. Two neighborhood residents testified
that they told the District's board that they feared a loss in property values because of the Robbinses'
violations of the restrictions. Furthermore, Bamer represented that the board's position was that
enforcement in this case, and in general, was necessary to preserve property values. (12) 
Correspondence prior to the District's meetings with the Robbinses and when it decided to file suit
reflects that it was considering the effect on property values. The District's July 2001 letter notified
the Robbinses that if, "in [the Board of Directors'] opinion, property values are reduced as a result
of this alleged violation, the Board will have the option to direct the district's attorney to file suit in
court to remedy the alleged violation and to recover the district's costs and legal fees, which the law
allows." See Tex. Water Code Ann. § 54.237.

 We find legally and factually sufficient evidence that the District's board did not act
unreasonably in determining that enforcement of the restrictive covenants was necessary to preserve
property values. (13) We overrule the Robbinses' second issue.


 Constitutionality of section 54.237


 In their third issue, the Robbinses assert that section 54.237 is unconstitutional on its
face. The constitutionality of a statute is a question of law that we review de novo. State v. Hodges,
92 S.W.3d 489, 494 (Tex. 2002); Perry v. Del Rio, 67 S.W.3d 85, 91 (Tex. 2001). To prevail on
their facial challenge, the Robbinses have the burden of showing that section 54.237 is
unconstitutional in every possible application. See In re Fisher, 164 S.W.3d 637, 655 (Tex. 2005);
City of Corpus Christi v. Public Util. Comm'n, 51 S.W.3d 231, 240-241 (Tex. 2001).

 As entities, municipal utility districts were constitutionally created by section 59 of
the Texas Constitution. See Tex. Const. art. XVI, § 59. In section 59, the conservation and
development of all of the natural resources of Texas, and development of parks and recreational
facilities were declared public rights and duties. Id. Specific powers are granted to districts which
they may not exceed, even by legislative enactment. See Deason v. Orange County Water Control
& Improvement Dist. No. 1, 244 S.W.2d 981, 984 (Tex. 1952); see also Tex. Const. art. III, § 52, art.
XVI, § 59. The Robbinses argue that the enforcement of deed restrictions is not within the
enumerated constitutional powers granted to municipal utility districts and that, therefore, the
legislature lacked authority to grant the power in section 54.237. See Tex. Water Code Ann.
§ 54.237.

 We need go no further than to observe that section 54.237 is not unconstitutional in
every possible application. See In re Fisher, 164 S.W.3d at 654-55. The Texas Constitution
provides that "the conservation and development of all of the natural resources of this State . . .
including the control, storing, preservation and distribution of its storm and flood waters, the waters
of its rivers and streams, for irrigation, power and all other useful purposes . . . the reclamation and
drainage of its overflowed lands, and other lands needing drainage . . . and the preservation and
conservation of all such natural resources of the State are each and all hereby declared public rights
and duties; and the Legislature shall pass all such laws as may be appropriate thereto." Tex. Const.
art. XVI, § 59. Therefore, if, for example, a restrictive covenant prohibited dumping oil into a storm
sewer, the District would be within its constitutional authority in enforcing the restrictive covenant. 
See id. Thus, section 54.237 is not facially unconstitutional. See Tex. Water Code Ann. § 54.237.
We overrule the Robbinses' third issue.


 Prevailing party


 The Robbinses' fourth issue is predicated upon the other three issues in its cross-appeal: they contend that because they should have been the prevailing party below, we should
reverse and remand so the district court can determine whether to award them attorney's fees under
the declaratory judgment act. See Tex. Civ. Prac. & Rem. Code Ann. § 37.009 (West 1997).
Because we have found that the district court did not err in rendering judgment in favor of the
District on its enforcement claims, we overrule the Robbinses' fourth issue.


CONCLUSION


 We sustain the District's issue and overrule the Robbinses' issues. We affirm the
portion of the district court's judgment awarding declaratory and injunctive relief to the District,
reverse the portion regarding attorney's fees, and render judgment awarding the District attorney's
fees in the amount of $89,000.

 In doing so, we are not unmindful of how the district court and jury may have
perceived the equities in this case. Under many attorney's fees statutes, the district court would have
had some discretion to consider such equities in determining whether to award fees. See, e.g., Tex.
Civ. Prac. & Rem. Code Ann. § 37.009; Herring, 972 S.W.2d at 20.

 We express no opinion regarding the balance the district court may have struck here
between competing equitable considerations other than to hold that section 54.237 leaves no room
for it. See Tex. Water Code Ann. § 54.237. Rather than allowing trial courts discretion to balance
the equities regarding attorney's fees in each case, the legislature has manifested the policy judgment
that districts should always recover all of their reasonable and necessary attorney's fees in any
section 54.237 action in which they prevail. We are bound to apply section 54.237 as written. See
Utts v. Short, 81 S.W.3d 822, 843 (Tex. 2002). Any concerns with the relative equities in this case,
therefore, are properly directed to the legislature rather than the courts.



 

 Bob Pemberton, Justice

Before Chief Justice Law, Justices B. A. Smith and Pemberton

Affirmed in Part; Reversed and Rendered in Part

Filed: September 8, 2005

1. Moreover, the Robbinses do not appeal the judgment in favor of Marquez enforcing the
restrictive covenants. Thus, even if we addressed their cross-appeal and sustained one or more of
those issues, the Robbinses would still be subject to the judgment in favor of Marquez and
proscribed from placing a trailer-port and trailer on their property.
2. The Robbinses tendered the affidavit testimony of several jurors to this effect, which the
District moved to strike as inadmissible.
3. There is no reporter's record from this hearing, but we have gleaned the fact of this event
from the parties' briefing.
4. Also, as discussed below, there is no support for any implied finding that the District had
incurred an amount of attorney's fees that could have been entirely offset by any amount awarded
to the Robbinses.
5. Similarly, during oral argument, the Robbinses attempted to recharacterize several of the
arguments from their cross-appeal as supporting implied findings in support of the judgment, a
distinction that would have had the effect of shifting the appellate burden on each issue. These
"implied findings" were: (1) the District lacked authority to file suit under section 54.237 because
it had waived its right to enforce the restrictive covenants (or had failed to meet its burden of
disproving waiver); (2) the District lacked statutory authority to sue under section 54.237 because
there was no evidence (or at least legally and factually sufficient evidence to support an implied fact
finding to the contrary) that its board of directors filed suit based on its "reasonable judgment [that]
enforcement of the restriction is necessary to sustain taxable property values in the district"; (3)
section 54.237 is unconstitutional on its face, and thus cannot serve as a vehicle for the District's
enforcement action and attorney's fee claim. These "implied findings" would each be inconsistent
with the judgment.


 We cannot imply a fact finding that the District waived its right to enforce the restrictive
covenants because the district court recited and rendered judgment on jury findings that the
restrictive covenants had not been waived by either the District or Marquez. Moreover, each of these
implied findings would negate the District's right of action under section 54.237, yet the judgment
is necessarily predicated on that claim. See Tex. Water Code Ann. § 54.237. The district court
rendered judgment enforcing the restrictive covenants on behalf of both Marquez and the District. 
At trial, the District had asserted its enforcement claim under both section 54.237 and the declaratory
judgment act. However, neither party suggests that the District would have had standing to enforce
the covenants independent of section 54.237. We accordingly conclude that we cannot imply
findings negating the availability of section 54.237 because they would be inconsistent with the
judgment awarding the District declaratory and injunctive relief. We instead consider the Robbinses'
arguments underlying these "implied findings" as potential grounds for reversing the portion of the
judgment enforcing the covenants on behalf of the District.
6. In fact, there is undisputed evidence that the District paid all of the plaintiffs' legal bills. 
7. For this reason, we need not reach the parties' dispute concerning whether the Robbinses
are estopped from asserting deemed compliance or whether the District waived that counter-defense
by failing to submit it to the jury.
8. We also note that this issue, even if sustained, would implicate only section A-2 and not
the other two restrictive covenants.
9. The legal sufficiency complaint regarding waiver was preserved in their motion for j.n.o.v. 
10. The District proposed such a submission in its initial draft of the jury charge.
11. Alternatively, assuming, as the Robbinses contend above, the District had the burden to
disprove waiver as an element of its enforcement claim under section 54.237, we construe the
Robbinses' argument to challenge the legal and factual sufficiency of the findings we would imply
under rule of civil procedure 279. See Tex. R. Civ. P. 279; see also Chon Tri v. J.T.T., 162 S.W.3d
552, 558 (Tex. 2005); Ancira Enters., Inc. v. Fischer, No. 03-03-00498-CV, 2005 Tex. App. LEXIS
4708, at *13 (Tex. App.--Austin June 16, 2005, no pet. h.).
12. We also note photographs and other evidence that illustrate the nature and dimensions of
the Robbinses' structure and travel trailer, illustrating why the District's board and residents were
so concerned about property values. The structure was metal-framed, approximately fourteen feet
tall, and resembled a large shed or hangar. It contained lights that illuminated Marquez's upstairs
bedroom and blocked sunlight to portions of his yard, killing plant life. The travel trailer resembled
a large bus and was 30 feet long, extending almost the entire length of the Robbinses' driveway.
13. For purposes of our factual sufficiency review, we have assumed that the Robbinses'
evidence was probative of whether the District's board acted reasonably. We express no opinion
regarding whether the Robbinses, in fact, raised a fact issue concerning the reasonableness of the
Board's actions.